Guy W. Bluff, Esq. NM Fed Bar #0019-4
Bluff & Associates (NM Offices)
5520 Midway Park Pl NE
Albuquerque, NM 87109
Tel: 505-881-3200 X 165
gbluff@DreamstyleUS.Com
Counsel for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

| | |
|---|---|
| DREAMSTYLE REMODELING, INC.; DREAMSTYLE REMODELING OF IDAHO, LLC, | **1:19-cv-01086-GBW-JFR** |
| Plaintiffs | **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO STAY LITIGATION PENDING ARBITRATION** |
| v. | |
| RENEWAL BY ANDERSEN, LLC, RENEWAL BY ANDERSEN CORPORATION, ANDERSEN CORPORATION | |
| Defendants | |

Plaintiffs, by and through counsel undersigned, hereby respond to Defendants' Motion to Stay Litigation Pending Arbitration [Document #21] filed December 12, 2019.  For the reasons set forth herein, Plaintiffs argue that Defendants' Motion is not well taken and should be summary denied.

Pursuant to L.R.Civ.Pro. Rule 7.6, Plaintiffs request that the Court set oral argument on Defendants' Motion.

## **INTRODUCTION**

Defendants' Motion to stay the pending litigation and to compel arbitration

is based on the erroneous assumption that the "Retailer Agreement" with the Arbitration clause (Section 27) must be honored and that the Plaintiffs, therefore, must arbitrate the enforceability of the illegal franchise agreements and all of Plaintiffs' disputes with Defendants.

As set forth herein, both federal and New Mexico law allow the Defendants' fraud in the inducement to invalidate the entire franchise agreement; New Mexico law invalidates the Defendants' unconscionable arbitration clause; a party, such as Andersen Corporation, who is not a party to an arbitration agreement cannot compel arbitration; and holding an arbitration which would result in a substantially bifurcated proceeding is inherently inefficient and not favored.

## I.    DEFENDANTS' FRAUD IN THE INDUCEMENT CLAIM INVALIDATES THE FRANCHISE AGREEMENT ENTIRELY

In this case, Plaintiffs and Defendant Renewal by Andersen, LLC and Renewal by Andersen Corporation (collectively "Renewal by Andersen" or "RbA") entered into four separate franchise agreements which are the subject matter of this litigation - Northern Arizona, Tucson Arizona, Boise Idaho, and New Mexico. See, Document #001 at ¶¶31, 41 (Northern Arizona); ¶¶ 35, 54 (Tucson), ¶¶58 (Boise) ¶¶26, 38, (New Mexico).

Federal substantive law provides what is commonly referred to as the "three-leg test", for determining whether an agreement is a franchise. The four "Retailer Agreements" meet all three elements of that test:

1.    RbA has a trademark, name or other commercial symbol Dreamstyle Remodeling was required to use in all of its operations; *See*, Document #001 at ¶86; *see also*, Declaration of Larry Chavez at ¶11(a).

2. RbA provided significant assistance and mandated numerous operational processes and systems that Dreamstyle Remodeling was required to use in its method of operation; *See*, Document #001 at ¶¶66-73, 82, 86; *see also*, Declaration of Larry Chavez at ¶11(b).

3. RbA charged numerous fees in excess of $500 in the first six months for their services. *See*, Document #001 at ¶¶44, 74, 84; *see also*, Declaration of Larry Chavez at ¶11(c).

[*See also*, Document #001, at ¶¶ 234 - 239 (Count VIII)].

Although the parties entered into multiple franchise agreements, the Defendants' failed to provide Plaintiffs the disclosures mandated by the Franchise Rule. [Document #001, at ¶ 237]. Notably, the <u>Declaration of Jeanne Junker</u> [Document #023] filed in support of Defendants' Motion does not dispute Plaintiffs' well plead allegations that the relationship is a franchise. Absent admissible evidence to the contrary, the court must take as true, Plaintiff's well plead complaint that the "Retailer Agreements" are in fact franchise agreements.

The Franchise Rule, 16 C.F.R. Section 436.2, obligates the Defendants to make specific disclosures to a potential franchisee. The Franchise Rule's mandatory disclosures of material facts are designed to aid a potential franchisee's ability to make an informed decision about the business opportunity. The disclosures must be in a Franchise Disclosure Document ("FDD") at least 14 calendar days before the sale of a franchise. The FDD provides a prospective franchise purchaser "with 23 items of information material to their investment decision." <u>Disclosure Requirements and Prohibitions Concerning Franchising</u>, 84 FR 9051-01.

The 23 items of material information include, among other things,

information about the franchisor's business, whether the franchisor's performance is guaranteed, whether the franchisor has been convicted of a felony or found liable in a civil action of involving franchise, antitrust or securities law, details of fees charged by the franchisor, the franchisor's obligations, and the status of the company. The FDD also requires the franchisor to fill out numerous charts with information needed by the franchisee, to provide required training program information with the costs to the franchisee of the training ---- in other words, 16 C.F.R. Section 436.5 is designed to protect the Plaintiff franchisees from entering into a fraudulent franchise agreement that hides these and other material terms that are necessary for a franchisee to make an informed decision before entering into a franchise agreement with a franchisor.

Failing to furnish the FDD to a prospective franchisee "is an unfair or deceptive act or practice in violation of Section 5 the Federal Trade Commission Act." *Id.* Congress' enactment of the Franchise Rule demonstrates the required disclosures are material to an investment decision and a failure to make the disclosures are a *per se* violation of the FTC Act and constitute unfair or deceptive practice. Therefore, if a franchisor failed to make the necessary disclosures of material facts to a prospective franchisee, the subsequent franchisee contract will have been induced by fraud.

To prove its fraudulent inducement by omission claim, Plaintiffs must show the Defendants' knowledge of the material facts, a duty to disclose, and silence. *See* Krupiak v. Payton, 90 N.M. 252, 253, 561 P.2d 1345, 1346 (1977). In this case, Defendants' knew the material information for which they had a statutory duty to disclose in the FDD to Plaintiffs, but they failed to disclose the required information at any point in time during the parties 12-year business relationship.

Therefore, each "Retailer Agreement" is voidable.

Absent admissible evidence to the contrary, the court must take as true, Plaintiff's well plead complaint that the "Retailer Agreements" are in fact illegal franchises agreements. Defendants' fraud in the inducement invalidates the franchise agreement entirely, including the arbitration clauses which Defendants rely upon in their pending Motion to Dismiss. As the "Retailer Agreements" are invalid and voidable, the court should deny the Defendants' Motion to Stay Litigation Pending Arbitration.

## II.    THE "RETAILER AGREEMENTS" INCLUDING THE ARBITRATION CLAUSE ARE UNCONSCIONABLE AND UNENFORCEABLE.

The "Retailer Agreement" drafted by the Defendants' did not allow Plaintiffs any meaningful choice for all of the essential contract's terms, all of which unreasonably favor the Defendants'. The first 19 pages of each agreement are identical in all respects save only the effective date and the specific Plaintiff company. See, Documents #001-1 (Northern Arizona), #001-3 (Tucson), #001-4 (Boise), #001-5 (New Mexico). The only substantive difference to each of the agreements relates to the specific trade name to be used (*e.g.* "Renewal by Andersen of Tucson", "Renewal by Andersen of Boise", "Renewal by Andersen of Northern Arizona" and "Renewal by Andersen of New Mexico") and the zip codes or market areas where the agreements related.

Based on the allegation contained in the complaint, the court may therefore determine the "Retailer Agreements", or parts thereof, are unconscionable. *See* Guthmann v. LaVida Llena, 103 N.M. 506, 510, 709 P.2d 675, 679 (2009), disapproved of by Cordova v. World Fin. Corp. of NM, 146 N.M. 256, 208 P.3d

901 (2009) (a contract may be held to be unconscionable if there is an absence of meaningful choice for a party together with contract terms which are unreasonably favorable to the other party).  While New Mexico has stated its public policy of freedom to contract, the New Mexico Supreme Court has determined there are equitable exceptions which justify deviation from the contract. *See* Builders Contract Interiors, Inc. v. Hi–Lo Industries, Inc., 139 N.M. 508, 511, 134 P.3d 795, 798 (2006) ("We will allow equity to interfere … when 'well-defined equitable exceptions, such as unconscionability, mistake, fraud, or illegality' justify deviation from the parties' contract." (quoted authority omitted)).  In this case, the Defendants' "Retailer Agreements" were induced by fraud, illegal based on their violation of the federal Franchise Rule, and unconscionable in terms.

Courts analyze the doctrine of contractual unconscionability from both procedural and substantive perspectives. *See* Fiser v Dell Computer Corp., 144 N.M. 464, 188 P.3d 1215 (2008) (New Mexico Supreme Court struck down a substantively unconscionable arbitration clause as violative of New Mexico public policy).

Substantive unconscionability concerns the legality and fairness of the contract terms themselves. *See id.* ("Substantive unconscionability relates to the content of the contract terms and whether they are illegal, contrary to public policy, or grossly unfair.").  The substantive unconscionability analysis focuses on "whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns."  Patterson v. Nine Energy Serv., LLC, 355 F. Supp. 3d 1065, 1100 (D.N.M. 2018).

Procedural unconscionability goes beyond the facial analysis of the contract

and examines the particular factual circumstances surrounding the formation of the contract, including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other.  Guthmann, 103 N.M. at 510, 709 P.2d at 679.

There is no requirement that both must be present or present to the same degree in order to invalidate an agreement.  See Fiser, 144 N.M. 464, 470, 188 P.3d 1215, 1221 (invalidating an arbitration clause without a finding of procedural unconscionability where "there has been such an overwhelming showing of substantive unconscionability"); seemingly, the courts have found procedural and substantive unconscionability have an inverse relationship.  The more substantively oppressive a contract term, the less procedural unconscionability may be required for a court to conclude that the offending term is unenforceable.  See Circuit City Stores, Inc. v. Mantor, 335 F.3d 1101, 1106 (9th Cir. 2003); see also 1 E. Allan Farnsworth, Farnsworth on Contracts § 4.28, at 585 (3d ed. 2004) ("A court will weigh all elements of both substantive and procedural unconscionability and may conclude that the contract is unconscionable because of the overall imbalance.").

Contract provisions that unreasonably benefit one party over another are substantively unconscionable. Padilla v. State Farm Mut. Auto. Ins. Co., 133 N.M. 661, 68 P.3d 901 (2003) (New Mexico Supreme Court found a one-sided arbitration clause substantively unconscionable); see also Fiser, 144 N.M. 464, 188 P.3d 1215, (New Mexico Supreme Court held unconscionable an arbitration clause in a consumer contract that prohibited class arbitration).  Further, in State ex rel. King v. B & B Inv. Group, Inc., 329 P.3d 658, 670 (2014), the New Mexico Supreme reformed the entire agreement of quadruple-digit interest rate installment

loans with all the substantive contract terms were non-negotiable and embedded in the boiler plate language of the contract grossly unreasonable, against public policy and substantively unconscionable.

New Mexico law has determined that while freedom of contracting may be a public policy, substantively unconscionable contracts like the four "Retailer Agreements" in question justify deviation from contract.

The "Retailer Agreements" are wrought with terms that are substantively unconscionable, including the arbitration clause, choice of law clause, and an intellectual property clause and non-competition clause. Through the arbitration clause (Section 27) the Plaintiffs' were forced to waive their right to a jury trial and access to the court. The choice of law provision contained within the arbitration clause ensures the arbitration will be conducted on the Defendants' "home turf" of Minnesota, where none of the Defendants' illegal activity occurred, using Minnesota law which is completely foreign to the Plaintiffs. [Document #001, Exhibits A - E].

Further, the Retailer Agreements restrain competition and allows Defendants a form of monopoly. [*See*, Document #001, at ¶¶ 102 to 117]. Given that the majority of the "Retailor Agreement" terms are substantively unconscionable, and the agreement results in a *defacto* illegal restraint on trade, the whole agreement is unconscionable.

In contrast to substantive unconscionability, procedural unconscionability "is determined by analyzing the circumstances surrounding the contract's formation, such as whether it was an adhesive contract and the relative bargaining power of the parties." Fiser, 144 N.M. at 470, 188 P.3d at 1221. The question of procedural unconscionability boils down to whether there was inequity in the

contract formation. *See* <u>State v. B&B</u>, 329 P.3d at 669 ("Procedural unconscionability may be found where there was inequality in the contract formation.").

Allegations of procedural unconscionability require the court to analyze several factors, "including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other." <u>State v. B & B.</u>, 329 P.3d at 669; *see also* <u>City of Raton v. Ark. River Power Auth.</u>, 760 F.Supp.2d 1132, 1154 (D.N.M. 2009) (Browning, J.) ("In analyzing whether a contract or a term in a contract is procedurally unconscionable, New Mexico courts consider several factors, including the use of high pressure tactics, the relative scarcity of the subject matter of the contract, and the relative education, sophistication and wealth of the parties." (internal citation omitted)).

In this case, the Plaintiffs' are a collection of small remodeling companies. Compare this to Defendants window and door manufacturing conglomerate operating in more than 90 different market areas throughout the United States. See, <u>Declaration of Jeanne Junker</u> at ¶6. [Document #023. Defendants' are the largest manufacturer and distributor of window and door products in North America having annual sales volume of more than four billion dollars [Document #001, at ¶ 97]. Plaintiff Dreamstyle Remodeling, Inc. on the other hand, is a small regional company which had only $18.8 million dollars in window and door revenue for 2017.

Defendants are astronomically larger and a more powerful corporate conglomerate that dwarfs the Plaintiffs. Further, as alleged in the Complaint, the Defendants' business practices are exclusionary and anticompetitive. [Document

#001, at ¶¶ 102 to 117].  Clearly, Defendants' have a superior bargaining position by virtue of wealth and enjoy a monopoly of the replacement windows market, which ensured Plaintiffs' had no reasonable alternative to the Defendants'.

The facts alleged in the complaint and the arguments set forth above demonstrate the Retailer Agreements were, induced by fraud and are both substantively and procedurally unconscionable.  Therefore, the court should determine the "Retailer Agreement" including the arbitration clause is unconscionable and unenforceable and deny the Defendants' Motion to Stay Litigation Pending Arbitration.

IV.    **ARBITRABILITY OF A DISPUTE IS A THRESHOLD ISSUE TO BE DECIDED BY THE COURTS.**

Federal case law holds that the arbitrability of a dispute is to be decided by the court and not by the arbitrator.  The Supreme Court has held that "[t]he question of whether the parties have submitted a particular dispute to arbitration, *i.e., the 'question of arbitrability,'* is an issue for judicial determination  [u]nless unless the parties clearly and unmistakably provide otherwise." AT&T Techs, Inc. v. Inc. v. Livingston v. Commc'ns Workers of Am., 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).  Defendants attempt to avoid this by citing to the American Arbitration Association Commercial Rules to indicate that the question of arbitrability is one for the Arbitrators to decide.  Defendants' ignore the seminal issue that the "Agreement" is itself legally void, and any reference to the American Arbitration Association Rules would similarly be void and unenforceable.

Further, Defendants ignore that they fraudulently induced Plaintiffs' into the agreements by failing to comply with their statutorily duty to disclosure the material information as required by the federal Franchise Act, "an unfair or

deceptive act or practice in violation of Section 5 the Federal Trade Commission Act." § 436.2; and the Minnesota Franchise Act §80C.01.  Finally, the Defendants' attempt to shield themselves from New Mexico law which would allow the court to invalidate the arbitration clause and each of the four "Retailer Agreements" based on the substantive and procedural unconscionability.

The Defendants' point to cases like <u>Belnap v. Iasis Healthcare</u>, 844 F.3d 1272 (10th Cir. 2014), to state the proposition that "arbitration is a matter of contract, and the court must enforce arbitration agreements in accordance with their terms." [Document #22 at pg. 5].  The Defendants' adamant foot stomping regarding the terms of their illegal, unconscionable, and fraudulently induced contract is voidable, and the court should not allow the Defendants' to strip the Plaintiffs' fundament rights of meaningful access to the courts and right to a jury trial.  NM Const Art. 2, §§ 12, 18.

More recently, the Ninth Circuit in <u>Nagrampa v. MailCoups</u>, 469 F.3d 1257, 1267 (2006), has held that "[t]he arbitrability of a particular dispute is a threshold issue to be decided by the courts."  This decision has not been overruled. *See also*, <u>First Options of Chicago, Inc. v. Kaplan</u> 115 S. Ct 1920, 1923 (1995). Therefore, to allow an arbitrator to decide whether a dispute is arbitrable is to ignore controlling Federal law that clearly requires the court, and not an arbitrator, to decide the threshold issue.

## V.    ARBITRATION SHOULD NOT BE REQUIRED BECAUSE FEDERAL LAW ALLOWS FRAUD TO INVALIDATE AN ARBITRATION AGRFEEMENT.

The United States Supreme Court has held that in analyzing whether an arbitration agreement is valid and enforceable, "generally applicable contract

defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening Section 2 [of the Federal Arbitration Act]". Kilgore v. Keybank, NA, 718 F.3d 1052, at 1057 (9ᵗʰ Cir, en banc, 2013); *see also* Hunt v. Jack V. Waters, D.C., P.C., 403 F. Supp. 3d 1036, 1065 (D.N.M. 2019) ("Like other contracts ... [arbitration agreements] may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.") (internal quotes and citations omitted). New Mexico Courts have found that "Congress did not […] intend the FAA to entirely displace state law governing contract formation and enforcement." Strausberg v. Laurel Healthcare Providers, LLC, 304 P.3d 409, 422 (2013).

Among other causes of action, Plaintiffs allege that the "Retailer Agreement" was procured by fraud. *See* Document #001, at ¶¶ 281 to 289 (Count XVI); Since the agreement was procured by fraud, the arbitration clause which Defendants' seek to compel is unenforceable. Despite the Plaintiffs having performed all their duties under the "Retailer Agreement", Defendants' as discussed above, never complied with 16 C.F.R Section 436.5 and the Minnesota Franchise Act §80C.01 mandatory disclosure requirements. Dreamstyle Remodeling was induced to enter into an arbitration agreement over matters for which it had only been given partial information. Plaintiffs' were fraudulently induced to enter into an agreement to arbitrate matters for which he had been denied critical information.

## IV.    ANDERSEN CORPORATION IS NOT A PARTY TO ANY ARBITRATION AGREEMENT.

Andersen Corporation, a Defendant, is not a party to the Retailer Agreements and, thus, not a party to the arbitration clause. Nevertheless, it has

brought this Motion to Stay Litigation Pending Arbitration.  The 9th Circuit has
ruled that the Court has the authority to decide whether a non-signatory can compel
arbitration.  In <u>Kramer v. Toyota Motor</u>, 703F.3d 1122 (9th Cir, 2013), a case cited
by the  Defendants in their Motion, the Court ruled that arbitration "is a matter of
contract and a party cannot be required to submit to arbitration any dispute which
he has not agreed so to submit [cit. omit.]"  *See also* <u>Britton v. Co-op Banking</u>
<u>Grp.</u>, 4 F.3d 742,744 (9th Cir.993) ("arbitration may not be invoked by one who is
not a party to the agreement and does not otherwise possess the right to compel
arbitration.") <u>Comedy Club. Inc. v. Improv W. Assocs.</u>553 F.3d 1277, 1287 (9th
Cir. 2009) ("[t]he strong public policy in favor of arbitration does not extend to
those who are not parties to an arbitration agreement [cit. omit.]").

      Defendant Andersen Corporation can cite to no "arbitration agreement"
signed by Plaintiff (or its principal) whereby Plaintiff ever agreed to arbitrate its
disputes.  Andersen Corporation attempts to bootstrap its argument by citing to the
"Retailer Agreement", however Plaintiff was clear in its Complaint that it was
seeking separate damages against Andersen Corporation which do not relate to the
"Retailer Agreement" at all.  Included in Plaintiff's complaint are claims against
Defendant Andersen Corporation, for damages caused by shipping defective
products and delaying shipment of projects [Document #001, at ¶¶ 90, 120 to 121,
142 (footnote), 154 (footnote)].  Also included are claims against Defendant
Renewal by Andersen, LLC for failing to pay for warranty and service repairs
[Document #001, at ¶¶ to 119, 279], and for both Defendants' wrongly taking
Plaintiff's intellectual property, its prospect database, and pillaging the same
[Document #001, at ¶¶ 91 to 92 (footnote), 161, 172].

      The Motion by the Defendants includes a party who is not a party to the

arbitration agreement. Granting Defendants' Motion would be a violation of Federal law. <u>Kilgore v. Keybank, NA</u>, 718 F.3d 1052, at 1057 (9th Cir, *en banc*, 2013).

**V.    ARBITRATION SHOULD NOT BE REQUIRED BECAUSE DOING SO WILL RESULT IN A BIFURCATED PROCEEDING.**

Arbitration should not be required because it will result in a bifurcated proceeding. If an arbitration were to be convened, it cannot include 1) any of the claims of Dreamstyle Remodeling against Andersen Corporation because Andersen Corporation is not a party to the agreement containing the arbitration provision and 2) because by the very language of Section 27 which Defendants seek to enforce, not all of Plaintiff's claims are "arbitrable".

Section 27 of the "Retailer Agreements" provides in part:

```
This Section 27 does not limit the ability of
either party to commence or continue litigation
(i) to enforce or protect its rights in its
confidential information or intellectual property,
(ii) to collect money owed, . . .
```

Plaintiffs' complaint assert claims which include (a) for damages caused by shipping defective products and delaying shipment of projects [Document #001, at ¶¶ 120 to 132]; (b) claims against Defendants for failing to pay for warranty and service repairs [Document #001, at ¶¶ 118 - 119] (c) and for both Defendants' wrongly taking Plaintiff's intellectual property, its prospect database, and pillaging the same [Document #001, at ¶¶ 162 to 173]; and (d) for injunctive relief by the Court in the form of protecting Plaintiff's rights in its confidential and intellectual

property.  None of these claims would be subject to arbitration under Section 27.

Denying Defendants' Motion will result in ALL of Plaintiff's claims against all the Defendants being adjudicated in one proceeding.  Defendants' have presented the Court with no admissible evidence that a single adjudicatory body for all claims and all parties would result in any prejudice to them.

## CONCLUSION

In short, Federal and New Mexico law, as well as the fairness of Dreamstyle challenging the multi-billion-dollar Defendants' cries out for this case to be heard by this District Court.  Therefore, Plaintiffs' requests that this court Deny Defendants pending Motion.

## REQUEST FOR ORAL ARGUMENT

Pursuant to L.R.Civ.Pro. Rule 7.6, Plaintiffs request that the Court set oral argument on Defendants' Motion.  The issues presented in this case are complex and fairness dictates that Plaintiffs be permitted to assist and focus the court on the substantive issues of fraud and unconscionability which mandate that this court retain jurisdiction to hear ALL of Plaintiffs' complaints.


DATED this 13th day of January 2020.

BLUFF & ASSOCIATES

/s/ Guy W. Bluff
Guy W. Bluff, Esq. CA# 128683
Bluff & Associates
5520 Midway Park Pl NE
Albuquerque, NM 87109
 505-881-3200 X 165
guywbluff@gmail.com
Counsel for Plaintiff

Undersigned hereby certifies that a copy of the foregoing has been served on Defendants' counsel by electronic means simultaneously with filing with the Court to:

Elizabeth K. Radosevich                                    eradosevich@peiferlaw.com
Peifer, Hanson & Mullins, P.A.
PO Box 25245
Albuquerque, NM 87125-5245
Co-Counsel for Defendants

Gary Hansen                                               ghansen@foxrothschild.com
Aaron Mills Scott                                         ascott@foxrothschild.com
Fox Rothschild LLP                                        Tel: 612-607-7000
222 South Ninth St, Ste 2000
Minneapolis, NM 55402-3338
Co-Counsel for Defendants


/s/ Guy W. Bluff
2020-01-13 Response to Motion to Stay