IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DREAMSTYLE REMODELING, INC., and
DREAMSTYLE REMODELING IDAHO, LLC,

      Plaintiffs,

vs.                                                                  Civ. No. 19-1086 KG/JFR

RENEWAL BY ANDERSEN, LLC,
RENEWAL BY ANDERSEN CORPORATION,
and ANDERSEN CORPORATION,

      Defendants.

## **ORDER GRANTING MOTION TO STAY LITIGATION PENDING ARBITRATION**

This matter is before the Court on Defendants' Motion to Stay Litigation Pending Arbitration and Memorandum in Support, both filed December 12, 2019. (Docs. 21 and 22). Defendants ask the Court to stay all proceedings until arbitration of Plaintiffs' claims is completed. Plaintiffs filed a response on January 13, 2020, (Doc. 29), and Defendants filed a reply on January 27, 2020, (Doc. 32). On February 6, 2020, the Court held a hearing regarding whether the Motion was moot since the Honorable John. F. Robbenhaar, the assigned magistrate judge, issued an order finding good cause to delay issuing a scheduling order and vacating all deadlines and hearings in this case, and whether Defendants are asking the Court to compel arbitration of Plaintiffs' claims. (Doc. 36) (Clerk's Minutes). Having considered the parties' briefing, counsel's statements at the hearing, the record of the case, and relevant law, the Court grants Defendants' Motion to Stay Litigation Pending Arbitration and orders the parties to file status reports every six months.

*I. Background*

Plaintiffs assert claims arising out of the January 31, 2019, termination of four Retailer Agreements under which they sold and installed replacement windows and related products manufactured by Defendants.  (Doc. 22) at 1.  Plaintiffs bring the following claims: unlawful restraint of trade, monopolization, and attempted monopolization, in violation of the Sherman Act; violation of Section 3 of the Clayton Act; violations of the Arizona Antitrust Act, the Idaho Competition Act, the New Mexico Unfair Practices Act, the Federal Franchise Rule, the Minnesota Franchise Act, and the Minnesota Unfair Practices Statute; breach of contract; tortious interference with contract; fraudulent inducement; common law fraud; and breach of implied covenant of good faith and fair dealing.  (Doc. 1) at 51-70.

In their Motion to Stay, Defendants state that Plaintiffs' claims fall within the scope of the Retailer Agreements' arbitration clauses requiring disputes be resolved under the Commercial Arbitration Rules of the American Arbitration Association (AAA).  (Doc. 22) at 6-7.  Defendants further assert that the issue of arbitrability of the claims is to be decided by an arbitration panel.  *Id.* at 8.  Therefore, Defendants move to stay this case under Section 3 of the Federal Arbitration Act (FAA) so that any arguments regarding the arbitrability of Plaintiffs' claims can be resolved in arbitration.  *Id.* at 8-9.

In response, Plaintiffs state that Defendants failed to provide disclosures required by the Franchise Rule, 16 C.F. R. § 436.2, which constitutes fraudulent inducement by omission and invalidates the four Retailer Agreements.  (Doc. 29) at 2-5.  Plaintiffs further state the Retailer Agreements are unconscionable because Defendants did not allow Plaintiffs any meaningful choice of the terms, the agreements favor Defendants, and Defendants were in a superior bargaining position.  *Id.* at 5-10.  Therefore, Plaintiffs argue the arbitration clauses are

2

unenforceable and the Court should deny Defendants' Motion to Stay. *Id.* at 10-12. Finally, Plaintiffs contend Defendant Andersen Corporation is not a party to the agreements and arbitration should not be compelled because it will result in a bifurcated proceeding. *Id.* at 12-15.

In their reply, Defendants maintain that the issue of arbitrability is for the arbitrator to decide because Plaintiffs challenge the Retailer Agreements as a whole and do not contest the validity of the arbitration clauses specifically. (Doc. 32) at 2-6. Defendants further argue that Defendant Andersen Corporation properly invoked the arbitration clauses as a parent corporation because Plaintiffs' claims against Andersen Corporation involve the terms of the Retailer Agreements. *Id.* at 6-7. Finally, to the extent any claims fall outside the scope of the Retailer Agreements, Defendants argue the proper course is to stay this case pending arbitration of the arbitrable claims. *Id.* at 7-10.

At the February 6, 2020, hearing, counsel for Defendants explained their Motion to Stay was not moot, even though discovery had already been stayed, because Defendants are asking the Court to stay the entire case. (Doc. 36). Defendants' counsel further explained they are not asking the Court to compel arbitration because the parties agreed to arbitrate this case in Minnesota and the Court does not have jurisdiction to compel arbitration in another forum. *Id.* (citing *Ansari v. Qwest Communications Corp.*, 414 F.3d 1214 (10th Cir. 2005)). Plaintiffs' counsel disagreed as to whether the Court has jurisdiction to compel arbitration. Nevertheless, since the parties are not asking the Court to compel arbitration, the issue is not properly before the Court and has not been briefed, so the Court will not consider it.

3

## II. Discussion

### A. *Arbitration Agreements and the Federal Arbitration Act*

Each of the four Retailer Agreements at issue contain arbitration clauses at Section 27 describing disputes the parties agree to arbitrate. *See* (Docs. 1-1 to 1-5, Section 27). The arbitration clauses state in their entirety:

> **27. <u>Arbitration</u>**. If there is any dispute, controversy, claim or cause of action between you and us arising out of or relating to this Agreement, including the termination thereof, its performance, or your being a Renewal retailer, or the rights or obligations of the parties (together, a "*Dispute*"), you and we will negotiate in an effort to resolve the Dispute. Both parties agree not to publicize any Dispute or otherwise disparage the other party in any social media or other public forum. **If you and we are unable to resolve the Dispute** through negotiation within thirty (30) days after written notice of the Dispute, **then such Dispute will be resolved by binding arbitration in Minneapolis, Minnesota, by three arbitrators in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") then in effect.** The arbitration will be conducted by three attorneys chosen from the panel of the AAA. One arbitrator will be chosen by each party and the third, who will be chairman, will be chosen by the two party-selected arbitrators. The arbitrators will apply the substantive rules of the law of the State of Minnesota (excluding conflict of law rules) and not principles of equity. Discovery permitted under any arbitration will be limited to a thirty (30) day period and will be limited to liability and damages issues. The panel will make written findings of fact and will explain the legal basis for its decision. The parties will each pay one-half of the fees and costs of the arbitrators, provided that such fees and costs may be subject to reimbursement pursuant to Section 29 below. Judgment may be entered on the arbitrators' award in any court having competent jurisdiction. This Section 27 does not limit the ability of either party to commence or continue litigation (i) to enforce or protect its rights in its confidential information or intellectual property, (ii) to collect money owed, or (iii) to protect its rights and interests in connection with litigation that was initiated by a third party. Neither party will have the right to participate in a class or collective arbitration or litigation, as a class representative or otherwise, or join or consolidate claims against the other party with claims of any other person or entity. The running of any statute of limitations is not affected by this

4

> Section 27. **The Federal Arbitration Act will apply to any arbitration under this Agreement.**

(Doc. 1-1 to 1-5, Section 27) (emphasis added).

The FAA, which governs arbitration provisions contained within a written agreement "evidencing a transaction involving commerce," governs the Court's interpretation and application of the Arbitration Provision. 9 U.S.C. § 2. The FAA's "involving commerce" requirement "is to be broadly construed so as to be coextensive with congressional power to regulate under the Commerce Clause" and is satisfied by "contracts relating to interstate commerce." *Comanche Indian Tribe of Okla. v. 49, L.L.C.*, 391 F.3d 1129, 1132 (10th Cir. 2004) (citation omitted). Moreover, each arbitration clause states that the FAA "will apply to any arbitration under this Agreement." (Docs. 1-1 to 1-5, Section 27).

The FAA articulates a strong national policy in favor of arbitration and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983). Section 2 of the FAA places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms. *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63 (2010). While the FAA favors arbitration agreements, a legally enforceable contract is still a prerequisite for arbitration, and without such a contract, parties will not be forced to arbitrate. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995) (stating presumption in favor of arbitration is reversed when there is a dispute as to existence of an agreement); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (citation omitted); *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014) ("[B]efore the [FAA]'s

heavy hand in favor of arbitration swings into play, the parties themselves must agree to have their disputes arbitrated.").

   *B. The Arbitration Agreements Delegate the Question of Arbitrability to the Arbitrator*

   Plaintiffs argue the Retailer Agreements are invalid and unenforceable because they were fraudulently induced and unconscionable. (Doc. 29) at 2-5. Defendants, however, contend the arbitration clauses in the Retailer Agreements express a specific intent by the parties to submit to an arbitrator the question of whether an agreement to arbitrate exists. (Doc. 22) at 8-9. Thus, the threshold question the Court must address, even before considering whether the parties have agreed to arbitrate or what they have agreed to arbitrate, is whether the parties have agreed as to who should decide arbitrability.

   There are two types of validity challenges under Section 2 of the FAA: "(1) One type challenges specifically the validity of the agreement to arbitrate," and (2) "the other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Rent-A-Ctr.*, 561 U.S. at 70 (citation omitted). Only the first type of challenge is relevant to a court's determination of whether the arbitration agreement at issue is enforceable. As a matter of substantive federal arbitration law, "an arbitration provision is severable from the remainder of the contract." *Id.* at 73. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate; and even where fraud is alleged as to the whole contract, the basis of the challenge must be directed "specifically to the agreement to arbitrate before the court will intervene." *Id.* at 71 (explaining challenge to validity of contract as a whole does not present a question of arbitrability); *see also Prima Paint Corp. v. Flood &*

*Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) (holding agreements to arbitrate are severable from larger contract and may therefore be separately enforced and their validity separately determined).

The Supreme Court has also recognized that parties can agree to arbitrate "gateway" questions of arbitrability, such as "whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Rent-A-Ctr*, 561 U.S. at 68-69.  A "delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Id.*  A federal court must address who should decide arbitrability first, before deciding whether a dispute is arbitrable.  *See Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017) ("[T]he question of who should decide arbitrability precedes the question of whether a dispute is arbitrable."); *Evangelical Lutheran Good Samaritan Soc'y v. Moreno*, 277 F. Supp. 3d 1191, 1212 (D.N.M. 2017) (same).  However, if a party specifically challenges the enforceability of a delegation provision, the district court considers the challenge.  *Rent-A-Ctr.*, 561 U.S. at 79.

Here, in the arbitration clauses of the Retailer Agreements, the parties agreed that the Commercial Arbitration Rules of the AAA would govern in any arbitration.  (Docs. 1-1 to 1-5, Section 27).  Under the AAA, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counter claim."  AAA Commercial Arbitration Rule, R-7.  The Tenth Circuit has held that incorporation of the AAA rules "constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability."  *Belnap*, 844 F.3d at 1283; *see also Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 528 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract."); *Dish Network L.L.C. v. Ray*, 900

F.3d 1240, 1246 (10th Cir. 2018) ("[W]hen contracting parties incorporate the AAA rules into a broad arbitration agreement, … such an incorporation clearly and unmistakably evinces their intent to arbitrate arbitrability."); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) ("Most of our sister circuits that have considered this issue agree with our conclusion that an arbitration provision's incorporation of the AAA Rules ... is a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the court."); *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009) (stating incorporation of AAA Rules "is about as 'clear and unmistakable' as language can get").

Plaintiffs argue the Retailer Agreements as a whole are void because Plaintiffs did not receive Franchise Act disclosures before signing them and because the agreements contain terms that are unconscionable. (Doc. 29) at 2-12. However, Plaintiffs do not challenge the arbitration clauses' plain language invoking the AAA Commercial Rules, which provides that arbitrators shall decide all issues of arbitrability. Accordingly, the issue of arbitrability is for the arbitrator to decide. As explained by the Supreme Court in *Rent-A-Center*, if a plaintiff fails to raise a specific challenge to the delegation provision, the court must enforce the provision. 561 U.S. at 75. In *Rent-A-Center*, the employee argued the parties' arbitration agreement was unconscionable, but did not specifically challenge the agreement's delegation provision incorporating Section 2 of the FAA. The Supreme Court, therefore, affirmed the district court's conclusion that the delegation provision must be enforced because the employee did not challenge its validity. The Supreme Court further held that the employee's subsequent

challenge to the delegation provision on appeal, arguing that he was offered a quid-pro-quo in exchange for allowing an arbitrator to decide certain gateway questions, was raised too late in the litigation.  *Id.*; *see also Evangelical Lutheran*, 277 F.Supp.3d at 1226 (holding arbitrability issue for arbitrator despite party's argument that arbitration agreement was unconscionable because party did not attack delegation clause specifically); *Frazier v. W. Union Co.*, 377 F. Supp. 3d 1248, 1268 (D. Colo. 2019) ("Challenges that are related to the enforceability of the arbitration agreement as a whole, rather than a specific challenge to the arbitration agreement's delegation clause are for the arbitrator.") (citation omitted).

Based on the foregoing, the Court concludes the parties agreed to arbitrate the issue of whether the Retailer Agreements are arbitrable.  Specifically, the parties incorporated the Commercial Arbitration Rules of the AAA in their arbitration agreements, and Plaintiffs do not specifically challenge the validity of that delegation provision.  Accordingly, the Court will stay this lawsuit pending the outcome of the arbitration.  *See* 9 U.S.C. § 3 (providing where parties have agreed to arbitrate issue in lawsuit, courts "shall … stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"); *Adair Bus Sales v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994) (explaining "proper course" for suit with issues that are referable to arbitration under FAA is to stay case until arbitration has been completed).

*C. Defendant Andersen Corporation has Properly Invoked Arbitration Clauses*

Plaintiffs contend that Defendant Andersen Corporation, parent corporation of Defendants Renewal by Andersen, LLC, and Renewal by Andersen Corporation, is not a party to the Retailer Agreements and cannot ask to stay this case pending arbitration.  (Doc. 29) at 12-14.  Defendants, however, argue that because the Complaint alleges concerted and

9

indistinguishable action by all Defendants, Defendant Andersen Corporation may enforce the arbitration clauses of the Retailer Agreements and obtain a stay of this case. (Doc. 22) at 7; (Doc. 32) at 6-7.

An entity that did not sign an arbitration agreement can invoke the arbitration agreement under two circumstances: "(1) when the signatory must rely on the terms of the agreement in asserting its claims against the non-signatory; and (2) where the signatory alleges substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *La Frontera Ctr., Inc. v. United Behavioral Health, Inc.*, 268 F. Supp. 3d 1167, 1217 (D.N.M. 2017). Here, all of Plaintiffs' claims are based on their allegations that the Retailer Agreements were wrongfully terminated. *See* (Doc. 1) at 31-70. Moreover, Plaintiffs' claims are asserted against all Defendants and Plaintiffs do not allege conduct by any Defendant that is substantially different from the other Defendants' conduct. *See id.* Therefore, the Court concludes Andersen Corporation has the right to enforce the arbitration clauses in the Retailer Agreements and obtain a stay of these proceedings pending arbitration. *See Long v. Silver*, 248 F.3d 309, 320 (4th Cir. 2001) ("[W]hen allegations against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement.") (citation omitted); *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88 (2d Cir. 1999), *cert. denied*, 531 U.S. 815 (2000) (holding signatory to arbitration agreement estopped from avoiding arbitration with non-signatories where signatory treated non-signatories and affiliated signatories as single unit in its complaint).

*III. Conclusion*

For the reasons stated above, the Court concludes this case should be stayed pending the outcome of arbitration of Plaintiffs' claims, including the question of arbitrability. To the extent Plaintiffs have raised claims that fall outside the Retailer Agreements, the Court also stays those claims pending arbitration. *See Summit Contractors, Inc. v. Legacy Corner, L.L.C.,* 147 Fed. Appx. 798, 802 (10th Cir. 2005) ("The decision whether to stay the litigation of the non-arbitrable issues is a matter largely within the district court's discretion to control its docket.") (citation omitted); *EmployBridge, LLC v. Riven Rock Staffing, LLC*, 2017 WL 3084462, *2 (D.N.M.) (same).

IT IS THEREFORE ORDERED that Defendants' Motion to Stay Litigation Pending Arbitration, (Doc. 21), is granted.

IT IS FURTHER ORDERED that the parties shall file status reports with the Court every six months regarding the progress of this case.

_____
UNITED STATES DISTRICT JUDGE